IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

:

BOARD OF EDUCATION FOR
MONTGOMERY COUNTY, MARYLAND   :

v.                            : Civil Action No. DKC 2004-2365

:

AAMER KHAN, et al.

:

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this Individuals with Disabilities Education Act ("IDEA") case are the following motions: (1) the motion of Plaintiff, Board of Education of Montgomery County ("Plaintiff"), for summary judgment pursuant to Fed.R.Civ.P. 56; (2) the cross-motion of Defendants Aamer Khan[1] and Najma Khan ("Defendants") for summary judgment also pursuant to Fed.R.Civ.P. 56; (3) Defendants' motion to dismiss as moot; and (4) Defendants' motion to receive additional evidence pursuant to 20 U.S.C. § 1415(i)(2)(B)(ii). Papers no. 8, 11, 13, 14.  The issues have been fully briefed and no hearing is deemed necessary.  The court now rules pursuant to Local Rule 105.6. For the reasons that follow, the court grants Defendants' motion to dismiss as moot.

---

[1] The parties have consistently used Aamer's full name in their publicly filed papers, and neither party has objected to this practice.  Accordingly, the court will identify Aamer by name.

**I.  Background**

    **A.  Factual Background**

    The following facts are set forth in the Administrative Law Judge's ("ALJ") Finding of Facts.  Paper no. 12, Decision of ALJ Kenneth S. Watson ("ALJ Decision").   Defendant Aamer Khan ("Aamer"), born November 10, 1989, began receiving special education services while in elementary school.   Aamer was diagnosed on June 6, 2001, as having a Pervasive Developmental Disorder, which consists of a severe language disorder and mild autism.

    For the 2002-2003 school year, Aamer was placed at Rock Terrace School, a separate special education facility with approximately 120 students.  Aamer showed progress during the 2002-2003 year.  He started the school year at a high first grade reading level and ended the year at a mid-second grade level.  Other indicators of improvement included performance of simple mathematics skills, participation in class-related activities, and interaction with teachers and peers.

    In the second half of the school year, preparations were made to develop an Individualized Educational Program ("IEP") for the 2003-2004 school year.  Aamer's teacher sent proposed goals and objectives to his mother, Najma Khan ("Najma"), who shared the information with her special education consultant, Jean Hickey.

Both Najma and Hickey attended an IEP team meeting on April 4, 2003.  When the Rock Terrace staff presented a proposed 2003-2004 IEP, Hickey told the IEP team that Najma was not prepared to sign it because the goals underestimated what Aamer could do and the level at which he could be taught.  Najma and Hickey also wished to explore the use of technology to improve Aamer's reading skills.  They asked the IEP team to conduct further evaluation to determine whether the proposed goals and objectives were appropriate.

The IEP team and Najma agreed that Aamer's 2002-2003 IEP would remain in effect through June 2003.[2]  The team also agreed to conduct psychological, speech and language, and education assessments of Aamer.  "The team would then reconvene, revisit the proposed goals and objectives and determine whether new goals and a new placement for the Child were warranted."  Paper no. 12, ALJ Decision, at 10.  To carry out the agreement they had reached, a statement was written by hand on top of the proposed IEP that "Parent requests continuance of current IEP goals until the end of the academic year 2002-03."  *Id*. at 11.  Both Najma and Marlene Kenny, a Montgomery County Public School ("MCPS"[3]) representative, initialed the statement.

---

[2] Rock Terrace's policy is to begin implementing an IEP immediately after it is formulated by an IEP team, rather than waiting until the start of the next academic year.

[3] MCPS is governed by Defendant Montgomery County Board of Education.

The tests were conducted in May and June 2003, and the test results and recommendations were sent home to Najma. In June, School Psychologist Jeffrey Hoffman performed a psychological assessment of Aamer, and recommended the addition of psychological services to Aamer's IEP. The final tests were conducted in December 2003.

Before the 2003-2004 school year started, Aamer's teacher, Elena Kornilova, reviewed Aamer's file, which included the May and June evaluations as well as the proposed IEP that was discussed at the April 4, 2003, IEP meeting. Kornilova implemented the proposed IEP, assuming that this was the IEP in effect for the 2003-2004 school year. She subsequently sent to Aamer's mother regular reports and notes on his progress in meeting the goals and objectives in the proposed IEP. His mother initialed the reports and sent them back to Kornilova. The IEP team did not reconvene before or during the 2003-2004 school year to review the assessments or to re-evaluate the proposed IEP, nor did the mother object to the implementation of the proposed IEP or request an IEP team meeting.

On February 26, 2004, the mother requested a due process hearing, alleging that MCPS had committed procedural and substantive errors that denied Aamer a free appropriate public education ("FAPE") as provided for in the IDEA, 20 U.S.C. 1400 *et seq*. ALJ Kenneth Watson issued a written decision on June 23, 2004, finding in favor of the Khans. The violations he

4

found included failing to develop and have in effect an IEP for
Aamer for the 2003-2004 school year and failing to convene an
IEP team meeting to review the assessments and the need for re-
evaluation of Aamer.  Paper no. 12, ALJ Decision.  As a remedy,
the ALJ awarded Aamer compensatory educational services in the
form of placement at Ivymount School for the 2004-2005 school
year.[4]

MCPS complied with the order.  The 2004-2005 school year
ended in June 2005.  In April 2005, MCPS convened an IEP team
meeting to develop an IEP for the 2005-06 school year and all
parties agreed that Aamer should remain at Ivymount for the
current school year. Paper nos. 13 and 14.

**B.   Procedural Background**

On July 23, 2004, Plaintiff filed suit in the United States
District Court for the District of Maryland, challenging the
ALJ's decision and asking that it be reversed.  Plaintiff filed
a motion for summary judgment on September 7, 2004, which was
followed by Defendant's cross-motion for summary judgment on
October 14, 2004.  In July 2005, a year after Plaintiff filed
its appeal of the ALJ's decision, Plaintiff took steps to file

---

[4]      In the Fall 2000, Najma had contacted Ivymount School,
a private special education institution in Montgomery County.
Of the school's 221 students, 215 are publicly placed, including
89 from MCPS.  The school accepted Aamer for admission, but he
did not enroll due to lack of funding.  Najma contacted Ivymount
again in spring 2003 to update Aamer's placement application.
In December 2003, Ivymount accepted Aamer for placement into its
high school program.

the administrative record with this court; the file was received
August 1, 2005.  On August 3, 2005, Defendants filed a motion to
dismiss as moot and a motion for the court to receive additional
evidence.  Meanwhile, on July 27, 2005, Defendants filed a
separate action to recover attorneys' fees and costs as the
prevailing party in a special education administrative due
process hearing. *Khan v. Weast*, No. DKC 2005-2041 (D.Md. filed
July 27, 2005).

Plaintiff resists dismissal, arguing that the new IEP does
not undermine the merits of its appeal and that Defendants'
newly filed request for attorneys' fees for the administrative
hearing indicates that there is still a live case or
controversy.  For the following reasons, the motion to dismiss
the case as moot will be granted, and the court need not address
the other motions.

## II.  Mootness

Under Article III of the Constitution, federal courts may
only adjudicate actual, ongoing controversies. *See* U.S. Const.
art. III, § 2, cl. 1; *Honig v. Doe*, 484 U.S. 305, 318 (1988);
*Dep't of Educ. v. Rodarte ex rel. Chavez*, 127 F.Supp.2d 1103,
1112 (D.Haw. 2000).  "In general a case becomes moot 'when the
issues presented are no longer "live" or the parties lack a
legally cognizable interest in the outcome.'" *Murphy v. Hunt*,
455 U.S. 478 (1982) (quoting *United States Parole Comm'n v.
Geraghty*, 445 U.S. 388 (1980)).  All or part of a case is moot

when events make it "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.(TOC), Inc.*, 528 U.S. 167, 189 (2000).

There are three exceptions to the general rule. First, if the challenged action is capable of repetition yet evading review, a mootness dismissal is inappropriate. *Honig*, 484 U.S. at 318; *Rodarte*, 127 F.Supp.2d at 1113; *Lillbask ex rel. Mauclaire v. Conn. Dep't of Educ.*, 397 F.3d 77, 85 (2nd Cir. 2005). This exception has two elements: "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again." *Murphy,* 455 U.S. at 482. Second, a case may not be moot even when a party voluntarily ceases its allegedly illegal conduct, unless "subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth,* 528 U.S. at 189 (quoting *United States v. Concentrated Phosphate Exp. Ass'n.*, 393 U.S. 199(1968)); *Rodarte*, 127 F.Supp.2d at 1113; *Lillbask*, 397 F.3d at 88. Third, a case is not moot where a petitioner would suffer "collateral legal consequences" if the actions under appeal were allowed to stand. *Phillips v. McLaughlin*, 854 F.2d 673, 677 (4th Cir. 1988); *Rodarte*, 127 F.Supp.2d at 1113.

With respect to the "collateral legal consequences" exception, a pending question of attorneys' fees does not automatically create a live "case or controversy" for the underlying claim. *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 480 (1990). The Fourth Circuit has described a claim for attorneys' fees as "ancillary" to the underlying claim. *Fawcett v. McRoberts*, 326 F.3d 491, 497 n.3 (4th Cir. 2003); *S-1 & S-2 v. Spangler*, 832 F.2d 294, 297 n.1 (4th Cir. 1987). Thus, in *S-1 & S-2*, the court held that the parents' claim for costs and attorneys' fees against the state "does not avert mootness of the underlying action on the merits." *S-1 & S-2,* 832 F.2d 294 at 297 n.1. *See also Rodarte*, 127 F.Supp.2d at 1114; *Bd. of Educ. of Oak Park v. Nathan R.*, *ex. Rel. Richard R.*, 199 F.3d 377, 381 (7th Cir. 2000); *Doe v. Marshall*, 622 F.2d 118, 199-120 (5th Cir. 1980). Accordingly, a court need not decide the merits of an administrative appeal solely for the purpose of determining whether one party prevailed for purposes of allocating attorneys' fees. *Rodarte*, 127 F.Supp.2d at 1115. *See also* 13A Charles Allen Wright et al., Federal Practice and Procedure § 3533.3, at 268 (1984) (stating that when a statute provides the right to recover attorneys' fees, ordinarily the issue of attorneys' fees "does not require determination of the merits if the fee issue can be resolved independently").

When mootness has been raised in IDEA cases, courts generally have found a live controversy under the "capable of

repetition" exception, even after the school year ended, because the case involved an ongoing controversy over the substance of educational services. For instance, in *Rowley v. Board of Education*, 483 F.Supp. 536, 538 (S.D.N.Y. 1980), a federal court in New York held that the parents' efforts to get a sign language interpreter for their daughter during the 1978-1979 school year was not moot a year later because the family sought an interpreter for the current year as well. Similarly, in *Rome School Committee v. Mrs. B.*, 247 F.3d 29, 31 (1st Cir. 2001), the First Circuit held that a dispute over the adequacy of proposed IEPs for the 1998-99 and 1999-2000 school years was not moot in 2001 because the parties assumed that the court's review would have a "material bearing" on the school system's obligations for the 2000-2001 year "and possibly future years." *See also Daniel R.R. v. State Bd. of Educ.*, 874 F.2d 1036, 1041 (5th Cir. 1989) ("The parties have a reasonable expectation of confronting this controversy every year that Daniel is eligible for public education.")

By contrast, courts have been more likely to find mootness when the claim involved a procedural violation that was unlikely to be repeated and the error was corrected subsequently. *See e.g. Rodarte*, 127 F.Supp.2d at 1103; *Lillbask*, 247 F.3d at 84; *Stellato ex. rel. Rebecca v. Bd. of Educ.*, 842 F.Supp. 1512, 1516 (N.D.N.Y. 1994). The facts in *Rodarte* are particularly on point with the present case.

In *Rodarte*, the school district had appealed a hearing officer's decision to award three months of compensatory education in the form of summer school.   127 F.Supp.2d at 1109. The student, Ramona Rodarte, had received home tutoring for much of her education due to severe asthma.   In April 1998, the student's teacher found journal entries detailing her wish to cut and kill herself.   Her teacher submitted a request that the student be evaluated for special education services. The tests were conducted in May, June, and July of 1998.   In June 1998, while the testing was ongoing, the mother requested an administrative hearing, claiming that the Department of Education had failed to adequately identify her daughter's disability or evaluate her mental health needs.   Two months later, in August 1998, an IEP meeting was held and an IEP was developed.   *Rodarte*, 127 F.Supp.2d at 1106.

Nevertheless, the mother's complaint proceeded, and an administrative hearing was held over five days in August and September 1998.   In October 1998, Due Process Hearing Officer Valerie Chang found several violations, including the lack of a mental health case manager to coordinate mental health services and the failure of the IEP to give an "indication on when the IEP team would reconvene to address the issues."   *Id.* at 1107. The hearing officer granted relief that included a meeting to modify the student's IEP based on her recent mental health evaluations and an order to provide three months of compensatory

education in the summer of 1999.  The school system provided the three months of summer school as ordered; the student also graduated from high school.  *Id.* at 1107-08.

In November 1998, the student and her mother filed a complaint in federal court seeking attorneys' fees.  They did not appeal the findings or conclusions of the hearing officer. The Hawaii Department of Education ("DOE"), on behalf of the school system, responded with a complaint appealing the hearing officer's award of three months of compensatory education and seeking reversal of the award.  The parties filed motions to dismiss and for summary judgment in September and December 1999. *Id.* at 1107-08.

The district court began its analysis by considering whether the appeal was moot in light of the fact that Ramona had already received the three months of summer school and had graduated.[5] The court declared that:

> There is no effective relief that this Court
> can grant to the DOE. It is undisputed that
> Ramona has already received the hearing
> officer's award of three months of
> compensatory education and that she has
> already graduated from high school ...
> Ramona cannot give the three months of
> compensatory education back.  Similarly,
> because Ramona has graduated, there is no
> danger that this Court would make additional
> findings of wrongdoing against the DOE

_____

[5] Neither party had argued that the issue was moot, although the student raised the issue in an opposition brief. *Rodarte*, 127 F.Supp.2d at 1111.

>           and/or grant Ramona additional compensatory
>           education or other relief.

*Rodarte*, 127 F.Supp.2d at 1112.

The court also found that none of the three exceptions to mootness applied.  First, the DOE's actions were not capable of repetition because the student's graduation precluded another controversy over her IDEA rights.  Second, voluntary cessation was not an issue because the student had graduated and neither party had voluntarily ceased any action.  Third, the court held that even though the question of attorneys' fees in the administrative hearing was outstanding, the "collateral consequences" exception did not apply. *Rodarte*, 127 F.Supp.2d at 1113.

In the present case, the parties lack a legally cognizable interest that keeps Plaintiff's claim alive.  Plaintiff's lawsuit challenges only the ALJ's award of compensatory education that resulted in Aamer's placement at Ivymount School during the 2004-2005 school year.  Paper no. 1.  The only request for relief that Plaintiff seeks is the reversal of the ALJ's decision.  *Id.*  The ALJ did not award Aamer placement at Ivymount because he found that, as a substantive matter, Aamer's needs were unmet at Rock Terrace, thereby denying Aamer a FAPE. In fact, the ALJ recognized that Aamer made progress during the 2003-2004 school year at Rock Terrace.  Paper no. 12, ALJ Decision, at 33.  Rather, the ALJ's award was granted to address

what he concluded were "procedural violations" on the part of
Plaintiff.  The ALJ explained:

> Perhaps some might maintain that this is a
> harsh outcome in the instant case,
> particularly when I have fully recognized
> the sincere and often successful efforts of
> [Rock Terrace School] and MCPS personnel to
> evaluate the Child and address his special
> education needs.  Certainly, I want it clear
> that I am not demeaning those endeavors.
> However, the Courts have uniformly held that
> denying a child and its parents the IEP
> process mandated by the IDEA is a serious
> shortcoming that strikes at the heart of the
> purposes behind that legislation.  I also
> have to recognize that MCPS is one of
> Maryland's most sophisticated school systems
> in administering its special education
> programs and bringing resources to bear in
> that area.  The types of errors reflected in
> this case are most atypical of MCPS.  MCPS
> has candidly acknowledged these procedural
> mistakes.  I hope and trust that this whole
> proceeding will have the salutary effect of
> re-emphasizing the importance of procedural
> compliance under the IDEA, especially in the
> area of IEPs and parental involvement in the
> education of children with learning
> disabilities.

*Id*. at 34-35.  The substance of Aamer's education was not at
issue; only the procedural mistakes were.   The parties now
agree that Aamer should remain at Ivymount School for the 2005-
2006 school year apparently without regard to any procedural
errors that led to Aamer's placement there for the 2004-2005
school year.

Even if Plaintiff prevailed in its claim, there is no relief this court can award.  Aamer attended Ivymount School during the 2004-2005 year.  The school year is now over.  Aamer cannot give back the one year of compensatory education he received. *Rodarte*, 127 F.Supp.2d at 1112.

Moreover, none of the three exceptions to mootness apply. Even though Aamer still qualifies for public education, nothing in the record indicates that there is a reasonable expectation of repetition by MCPS.  Neither party has argued that MCDS is likely to repeat the same procedural error it purportedly made in formulating or failing to formulate Aamer's 2003-2004 IEP. In fact, Plaintiff followed proper procedures for the current school year. Paper no. 13.  Voluntary cessation is not an issue, given the posture of this case.  Arguably, the question of Aamer's placement will arise next spring when the school conducts its annual IEP evaluation.  The possibility that MCPS may want to move Aamer in the future is mere speculation and generally insufficient to keep the issue alive. *Lillbask*, 397 F.3d at 88.  There is also no indication that the 2004-2005 placement will affect any future determination, now that the parties agree that Ivymount is the proper placement for the 2005-2006 school year.

Plaintiff argues that there is a live controversy because Defendants have filed a claim for attorneys' fees incurred in the administrative hearing, but cites no authority in support.

Paper no. 14, at 3-4.  As discussed above, attorneys' fees will
not keep an otherwise moot issue alive.  *S-1 & S-2*, 832 F.2d at
297 n.1; *Rodarte*, 127 F.Supp.2d at 1113.  The court need not
decide the merits of an administrative appeal solely to
determine the issue of attorneys' fees for work at the
administrative level.  *Rodarte*, 127 F.Supp.2d at 1115.

On the other hand, Defendants seek, in the motion to
dismiss, attorneys' fees for this appeal to the district court,
which will be dismissed.  Under the IDEA, "the court, in its
discretion, may award reasonable attorneys' fees as part of the
costs to the prevailing party who is the parent of a child with
a disability."  20 U.S.C.A. § 1415(e)(4)(B).  The dismissal of
the appeal as moot precludes Defendants from achieving the
status of prevailing parties.  To be a prevailing party:

> [T]he 'plaintiff must obtain an enforceable
> judgment against the defendant from whom
> fees are sought, or comparable relief
> through a consent decree or settlement. . .
> . [A] plaintiff "prevails" when actual
> relief on the merits of his claim materially
> alters the legal relationship between the
> parties by modifying the defendant's
> behavior in a way that directly benefits the
> plaintiff.'

*Combs v. Sch. Bd. of Rockingham County*, 15 F.3d 357, 360 (4th
Cir. 1994) (quoting *Farrar v. Hobby*, 506 U.S. 103, 111-12 (1992)
(internal citations omitted)).  A moot case generally does not

qualify a litigant as prevailing for purposes of awarding attorneys fees. *Matthew V. ex rel. Craig V. v. Dekalb County Sch. Sys.*, 244 F.Supp.2d 1331, 1340 (N.D.Ga. 2003) ("[I]f a case was moot before judgment issued, the judgment can afford the plaintiff no relief, and consequently, no attorney's fees."); *Randolph Union High Sch. v. Byard*, 897 F. Supp. 174, 176 (D.Vt. 1995) ("Byard cannot possibly be a 'prevailing party' because, despite the hearing officer's favorable decision, this dispute was moot when it was filed."); *accord S-1 & S-2 v. State Board of Educ.*, 21 F.3d 49, 51 (4th Cir. 1994) ("[T]he dismissal on appeal of an action under 42 U.S.C. § 1983 for prudential reasons as moot operated to vacate the judgment below . . . and prevents the plaintiffs from being found prevailing parties by virtue of post-dismissal events.") (internal citations omitted). *See also Rhodes v. Stewart*, 488 U.S. 1 (1988) ("The case was moot before judgment issued, and the judgment therefore afforded the plaintiffs no relief whatsoever."). Accordingly, Defendants have not "prevailed" on appeal and their request for attorneys' fees for the appeal will be denied.

## III. Conclusion

For the foregoing reasons, Defendants' motion to dismiss as moot will be GRANTED, but the request for attorneys' fees for the appeal will be DENIED. A separate Order will follow.

16

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge

September 15, 2005